## THE STATE v. JACKSON, a Slave.

In the trial of a slave under the act of 1st of June, 1846, the law does not require that he should be tried in the ward in which the offence was committed. It is sufficient, if the trial takes place in the parish in which the offence was committed.

Where ten jurors are summoned under the act of 1st of June, 1846, to try a slave, and one of them is excused upon his own request, upon the ground he did not understand the English language ; this does not vitiate the proceedings, because by the act, nine jurymen constitute a quorum.

The act of 29th of May, 1846, authorizing juries to qualify their verdict in capital cases, by adding "without capital punishment," applies only to free persons ; but where that qualification has been added to the conviction of a slave, it is not for him to complain of the modification of the sentence in his favor.

Where the jury had found a slave guilty of arson, without capital punishment, and the justices sentenced him to imprisonment for life, in the penitentiary ; Held : the sentence was legal, and carried out the manifest intention of the jury.

The Supreme Court will not revise upon a writ of error, in a criminal case, the decision of the court of the first instance, upon refusing a new trial, upon grounds which rested on the exercise of the discretion of the judge of that court.

APPEAL from the Justice Court of the Parish of East Baton Rouge, *P. A. Walker* and *T. R. Dufrocq*, Justices. *Isaac Johnson*, Attorney General, for the State. *G. S. Lacey·* and *Loucks*, for the appellants.

This case was appealed upon the following assignment of errors : "1st. That it does not appear from the record, that the trial of the accused was had in the ward in which the justice resided, before whom the complaint was made ; but on the contrary, and so is the fact, it was had in a different ward. 2d. That *Leon Bonnecaze*, who had been summoned as a juror, was set aside without legal excuse. 3d. It appears from the record, that but nine jurors were sworn, to constitute said tribunal, whilst the statute requires ten. 4th. That the jury was unauthorized to find any other verdict than, either, one of guilty, not guilty, or for the infliction of corporeal punishment ; and that no sentence can be rendered by the court upon the present finding. 5th. That no judgment can now be entered up against the accused, the tribunal being dissolved, and the justice or justices having failed to sign a sentence to be put in execution, by and with the concurrence of the jurors assisting at the trial. 6th. Upon the ground of newly discovered evidence, as set forth in the following affidavit, to wit :

" *George S. Lacey*, agent for the owner of, and attorney and counsel for, the accused, being duly sworn, doth depose and say : that since the trial of this cause, this deponent has discovered evidence important to the accused, of which, at the time of the trial, he was ignorant, and which he could not with due diligence, have obtained before. That this deponent expects to prove by *Richard Loucks*, *Andrew Lesage* and *John R. Dufrocq* and others, that the slave *Eliza*, the principal witness against the accused, had been previously tried and convicted for

an assault upon the person of a white woman. He also expects to prove, by *Alexander Shaw* and by others, that the said *Eliza* had been severely threatened and whipped until she made the disclosure, that the accused had committed the crime whereof he has been convicted. This expectation being grounded upon the statement of said *Shaw*, made to *Charles La Noue* and others, and the said newly discovered evidence this deponent intending to offer, for the purpose of showing the manner in which she was originally induced to fix the crime upon the accused; for the further purpose of showing that she swore falsely in the previous trial, when she stated, as she did, that no force had been used; and lastly, to be offered for all legal purposes. Furthermore, this deponent expects to prove, by *Wm. Taylor*, and by other competent witnesses, the bad, vicious, and immoral character of the said *Eliza*; and furthermore, by a slave said to belong to *Duplantier*, that the said *Eliza* had made threats against the accused; and that he expects to prove, by *Andrew Lesage* and others, that the character of the accused is so bad, vicious, and wanton, as to have compelled her mistress to have her tried and confined for days at a time. And this deponent further says, that this affidavit is not made for the purpose of delay, but to secure substantial justice for the accused; and that this deponent has good reason to believe, and does believe, that upon a subsequent trial of this cause, the accused will be enabled to make a substantial defence upon the merits."

The judgment of the court was pronounced by

PRESTON, J. *Jackson*, a slave belonging to *Mrs. Newcomb*, was accused of having, on the night of the 13th of September, 1850, set fire to the dwelling-house of *Mrs. Shaw;* was tried and convicted of the crime, and sentenced to imprisonment for life in the penitentiary. From the sentence, he has appealed.

In support of his appeal, he alleges that the second section of an act, approved on the 1st of June, 1846, relative to the trial of slaves, requires, that whenever it shall be necessary to try a slave accused of a capital offence, the justice of the peace before whom complaint is brought, shall notify a justice, resident in an adjoining ward, and shall require such justice to attend at his office the day after, for the purpose of choosing ten persons, owners of slaves, to assist at the trial of the accused. It is said, it appears from the record, that the trial was had in an adjoining ward from that in which the justice held jurisdiction, before whom the complaint was brought. 1. That does not appear by the record. Perhaps it might, by the police jury laws of the parish of East Baton Rouge, establishing the boundaries of wards, which are cited, but not brought before us. 2. The law does not expressly require, that the trial should take place in the ward in which the complaint was made, but only that the magistrate, before whom the complaint is made, should require the attendance of a magistrate from an adjoining ward, at his office, to select ten owners of slaves to assist in trying the accused. It would be more conformable to principle, to try the slave in the ward in which the offence was committed, than in that of the magistrate before whom the complaint is made, if they be different. But, if he is tried in the parish, he has all the advantages of a trial in the vicinage, which is accorded by law to free white persons, and cannot reasonably complain. Publicity in trials is the greatest protection of innocence, and security to the community that crimes should not go unwhipt of justice. The accused was tried in the office of the mayor of Baton Rouge; probably, taking the year through, the most public place in the parish.

*Leon Bonnecaze*, one of the persons chosen and summoned to assist at the trial of the accused, was excused, at his own request, from sitting on the tribu-

nal, "on account of his incompetency to understand the English language, to judge of the evidence as it was given;" not, as urged by the defendant, because he was decided by the court to be an incompetent juror. The law confided to the two justices of the peace, to choose the jurors to compose the tribunal. They exercised a wise discretion in excusing *Mr. Bonnecaze*, for the reasons assigned, and which would have been highly advantageous to the accused, if he had been innocent.

It is next contended, that an express provision of the act of 1846, providing for the trial of slaves, was violated by empanneling nine, instead of ten, slaveholders, for the trial. The third section of the act required the magistrates to select and summon, within three days if possible, ten owners of slaves, residents of the parish, for the purpose of forming the tribunal. This was done, and the jurors appeared at the time and placed fixed for the trial. *Mr. Bonnecaze* was then excused for sufficient cause; it was more proper to excuse him before, than after being sworn. By the fifteenth section of the act, the nine remaining jurors constituted a quorum for the trial. The law thus established a tribunal of ten jurors, but declared nine a quorum of the tribunal. From whatever cause one failed to sit upon the trial, the remaining nine constituted a quorum, and formed, with the magistrates, the tribunal required by law.

It is urged, that the tribunal, under the ninth section of the act of 1846, could only inflict corporeal punishment, and not imprisonment for life. This court decided the contrary, in the case of *The State* v. *Lewis*, a slave, after a careful comparison of the seventh section of the act of 1843, "to amend the Black Code," with the ninth section of the act of 1846, "relative to the trial of slaves." We have attentively weighed the arguments in the present case, and reconsidered the reasons given for the former opinion of the court, and are satisfied the decision was correct.

In the opinion given by this court, in the case of *The State* v. *Lewis*, the court referred to the act of the 29th of May, 1846, authorizing jurors to qualify their verdict in capital cases, by adding, "without capital punishment," and upon the verdict thus rendered, requiring the court to sentence the convict to hard labor for life in the penitentiary. That act was intended for the government of free persons alone, and the tribunal, in the present case, may have been misled, by the reference to it, into an error in the form of their verdict, of "guilty, without capital punishment." But their intention is palpable to punish the convict with perpetual imprisonment, and it is not for the slave to complain that they extended to him the leniency expressly provided for free persons, and in the same form. The fourteenth section of the act, relative to the trial of slaves, then, expressly applies to the case: "No proceedings had in accordance with this act, shall be annulled or impeded by any error in form." And for this reason, the fifth ground relied upon by the counsel of the accused, for the reversal of the judgment, is untenable.

It is urged, that no judgment should have been entered up against the accused,—the tribunal having dissolved without concurring in, and signing, the sentence afterwards signed by the justices, to be put in execution. A decree, or sentence, was unanimously pronounced and signed by the jurors and magistrates composing the tribunal, which was intended to subject the accused to imprisonment for life; and which, as to free persons, could mean nothing else. Being informal, and not express to that effect, the magistrates afterwards put the sentence into legal form, expressing what we know was intended, and signed it,

We should disregard the law just quoted, if we permitted an immaterial informality to prevail over a substantial conviction and sentence of a slave, to a very mild punishment for an enormous crime.

Lastly, it is contended, that a new trial should have been granted by the magistrates, upon the affidavit, that material evidence had been discovered after the conviction. The reasons given by the magistrates for refusing it, are satisfactory, even if this court could revise the exercise of their discretion on this subject, by a writ of error. This court has held, in the case of *The State* v. *Hunt*, and in other cases, that it has no power to do so.

The attention of the court is further called to the fact, that *D. D. Arden*, who sat upon the tribunal, was not an owner of slaves, as required by the second section of the act of 1846, relative to the trial of slaves. The fact was ascertained before he was sworn. He was neither challenged, nor a bill of exceptions taken to the decision, that he was a competent juror. The accused took the chance of a favorable verdict from him, and cannot now complain. Besides, upon the authorities cited in the case of *The State* v. ———, just decided, we are of opinion, that neither a new trial can be granted, nor the arrest of judgment ordered after verdict, on the ground that a juror, who sat upon the trial, was incompetent. This view of the point renders it unnecessary for us to examine the question, whether *Arden* was not a competent juror, inasmuch as his wife was an owner of slaves, the revenue from whose labor belonged to him, rendering him as deeply interested in the proper trial of slaves, as if the title to a slave were in him.

The judgment of the district court is therefore affirmed, with costs.